Good morning. Robert Goldsmith appearing for Edward Garcia. I would like to reserve two minutes for rebuttal. All right. If you'll watch the clock, I'll try to help you as well. Thank you. Your Honor, we're here asking the Court to reverse the denial of the motion to withdraw the guilty plea. We think the motion should have been granted because it was made pre-sentencing and it was based on two grounds. One ground was that there was new exculpatory evidence, and the second ground was that a new case, U.S.A. v. Winner, came out three months after the plea but before sentencing that gave Mr. Garcia a reason to withdraw his plea and surprised all of the parties with a change in the law. Let's talk about the exculpatory evidence first. This individual says that your client didn't live there, but he himself conceded he did live there, so that hardly seems like new evidence. And she said that the guns belonged to somebody else. He agreed with that, but was concerned because he was right there with the guns. That's correct. Two points that you raised. One is she moved out four days before the raid. Yes. So it's certainly plausible that he moved in thereafter. But, moreover, I think he would have testified that he lived there on and off, that he was not a permanent resident of the house. So even if he was there before, he wasn't living there per se. Do you know exactly what he said to the parole or probation officer about living there? What he said to the probation officer, as paraphrased in the report, is that I think he understood that in his position, being a felon, it might not have been wise for him to be in a room with firearms where it could be extruded. I understand that, but I'm talking about his living there. What did he say about that? I don't recall precisely a statement admitting that he lived there for any permanent or lengthy period of time. Well, you would certainly gather that from what the parole officer is reporting. That might be a fair inference. But I think given the state of that declaration and his vague statements, as well as his statements disavowing the truth of the charges at the plea, I think the trial court should have held a hearing on the motion to determine how credible the witness was in terms of her exculpatory evidence. And the trial court should have held a hearing on that. The question I had about his language, this is kind of an unusual case. He doesn't get an Alfred plea. Right. And he does all he can to dance around. But in the end, the plea is accepted and it needs to have this factual basis. So I guess my question is, do you have any cases that help you on his dancing situation? Well, I don't have a case that has him precisely on point in his dancing. But I think the case that does instruct this court best is this recent case in Ortega-Escanio that came out in July after my initial brief was filed. That case, the defendant, there was no issue of him proclaiming his innocence or doubting the facts at his plea. He fled. And then nine months after the plea, a Supreme Court case came down that gave him an argument that his ground for deportation was invalid. In other words, that the immigration judge didn't properly advise him that he could file a petition for relief because he had a second felony and he was deported. This Court said that that was a plausible ground for dismissal. The Court went on to say, very importantly, that the validity of Ortega-Escanio's plea, and I'm quoting, was not the proper inquiry. So when he raised something that raised an issue that could exculpate him, the Court says, under the fair and just standard, which is what we're working with here, the Court is not to look at the plea. Because if the person has got a witness now that says he's innocent or an argument under a new case that says he might not have been deportable, then we don't really consider the validity of the plea or any statements at the plea. Those aren't relevant, because Ortega-Escanio never even waffled like Mr. Garcia. There's no reason. Well, how does that square with the Olivares-Escanso case in terms of that? That was the case where they kind of say, if you make a bad prediction about how things might come out, you make your plea. That's right. You think this is the law, and it turned out you rolled the dice a little wrong because then the law after you enter your plea comes out a little differently. So that was the situation in that case. How does that case square with your argument and also with the other case? The trial court properly would have considered that case for the argument under the Wenner prong for a motion to withdraw. But the problem is that the trial court considered that case for both prongs. And I think the analysis is, if you're raising an issue that goes to his understanding of the law, then the validity of the plea, the voluntariness of the plea, the statements at the plea are relevant to the fair and just analysis. But if you're raising new evidence, something that doesn't have to do with the validity of the plea, then Ortega-Escanio teaches us that that's not relevant. And the Court used the standard of, you know, the change of mind problem with a new change in the law to analyze for both prongs. And, in fact, the trial court really didn't analyze the new evidence at all. Its original order denying the motion didn't even mention the new evidence. That was sort of my problem with the district court's approach was that it seemed like the district court didn't really address the newly discovered evidence of the position of Ms. McClurg that he didn't live there and just visited from time to time. And even if there's some contradictory evidence, it might just go to the weight of that evidence. And so I didn't really understand the district court's failure to address that. And I think the district court, even in the motion to deny the reconsideration, skirted it and went back to the analysis that would apply if it were just a winner issue, just an issue. He just handled it summarily on the reconsideration. Yes. Well, there's two parts to his reconsideration, and I don't know how delicately we should parse these. One has to do with the voluntary knowing intelligent, which was your argument. That's kind of the wrong situation. That's not what we're arguing about here. But he also says it doesn't alter the fact that Garcia did not claim innocence. So how does – how do we use that finding and conclusion with the cases? Because, again, that finding goes to an analysis. If our new change in the law argument was our only argument, that would be appropriate then, because it goes to the validity of the plea. Certainly no one can plead guilty and come in there. But this goes to factual innocence. In other words, I mean, I think one argument could be that, of course, you don't have to show that you're absolutely innocent. You just have to show there's a reasonable doubt about the ability to have you convicted. Of course. So he lived there, he didn't live there, who knows. Right. I guess you're saying that the judge is, in effect, putting him into a standard of actual innocence, which would be incorrect. At that stage in the proceedings, that's correct, Your Honor. Counsel, if he is not a career criminal under Wenner, what's the maximum sentence that he could have been given under the – Under – as charged? Yes. He was still looking at over 20 years. Definitely. His exposure was higher. But obviously there was no automatic sentence, severe sentence, as a career offender. And now with Booker, of course, that even softens that type of sentence, giving the court discretion. Do you think that Booker applies in a situation where the parties have agreed that if the sentence is – deviates from what they've agreed to, either one can withdraw the plea? This is not a judge-decided sentence. This is a negotiated sentence. I think – I think even Booker addresses that. And if they agree to a particular sentence, I don't think Booker would apply. In an 11c1c plea where it's an agreed sentence in the court of sepsis, I think then that does remove the discretion from Booker if the court of sepsis. Would you want to reserve the remainder of your time? I do. Thank you. May it please the Court. Good morning. I'm Bruce Miyake representing the United States in this matter. Your Honor, what this case is about is plea remorse. This defendant misconstrued the impact of Wenner, believed he was facing less of a sentence exposure, probably was upset with the deal he struck as a result of his misconstruing Wenner, and was looking for a way out of an otherwise valid plea. And this is nothing more than a change of heart. A miscalculation of his sentencing exposure, which this Court has consistently ruled is not a fair and just reason for withdrawal of the plea. And if we agree with you on that Wenner analysis, then we have the issue of what did the district court do with the newly discovered evidence, which could be a separate ground, could it not? It could be a separate ground, Your Honor. So why – what bothers me is that we now have conflicting evidence about his – the status of his residency and the status of these guns, all of which underlies the ability to accept the plea here. Why isn't that enough of a doubt to at least let him go back and consider whether or not to enter a plea? Well, Your Honor, I think that there are two issues. One, you have to look at the nature and quality of this, quote, newly discovered evidence. And simply because it's new doesn't necessarily result in automatically a fair and just reason. We have this affidavit by Crystal McClurg, but it doesn't totally exculpate the defendant. In fact, all it says is that she – she has lived there, that he didn't live there, which conflicts with his statement, as this – as Judge Fletcher had pointed out, with the probation officer's – the defendant's statement to the probation officer, as well as his sworn statements at the plea hearing. Okay. So let's kind of break it up, though. If you had newly discovered evidence, it wouldn't have to show that you were actually innocent if it would raise enough of a doubt, for example, that you might not be convicted. So apart from what this evidence does, don't you agree you don't have to – your innocence? I would agree in part. But I think that the newly discovered evidence has to be of such a force that it does raise the specter that it would result in his total innocence if the matter went to trial. And the reason why I say that – But when you go to trial, you don't get a judgment of total innocence. You get – Well, beyond a reasonable doubt. Right. Perhaps I'm – I overstated that. Well, the McClurg declaration is not totally off the wall. It's someone who lived there and says that he didn't live there, that he dropped by all the time or visited from time to time. So why isn't – why isn't that sufficient to at least deserve the careful attention of the district court, which it seems to me it didn't get here? Well, I guess I would disagree with – respectfully disagree with Your Honor about the careful attention. I think it did. I think the court – one comment I do want to make is I think that to say that the McClurg affidavit says that he didn't live there but would drop by occasionally may overstate it. It simply – it said that he didn't live there. It also goes on to say – it doesn't say that he didn't, quote, possess the guns, as the jury would have been – Well, it said that he hung out there or something of that nature. I don't recall it saying that, but I know that it said that he didn't live there. That did conflict with what he had told the probation officer. It did conflict with his sworn statements. So I guess that's really taking it to the second level. If you don't need to show actual innocence but some reasonable doubt, and then we have this situation where his evidence is actually at odds with his already statements on record, then what's the analysis that the court should have engaged in? Well, I think that the court has to balance those two. It has to balance the evidence that it has, and the court did that in this case. And as this court and the Supreme Court has indicated, in evaluating a motion to withdraw, substantial weight should be given to sworn statements at a plea hearing. And that's what Judge Lasnik did here. Your Honor, the statements at the hearing were sort of strange, non-Alford, quasi-Alford-type statements. I mean, the judge said, I'm not going to let you do an Alford plea, but you can say you admit something for purposes of the plea? Well, I agree, Your Honor, but the fact of the matter is there is either an Alford plea or there is not an Alford plea. This was not an Alford plea. And while the defendant tries to make the most of his qualification, it's my position that that qualification is legally irrelevant. He had to make a difficult choice here, whether or not he was going to admit his guilt or not admit his guilt. And he decided that he was going to admit his guilt. It made him feel better that he could say, for purposes of this plea. But the fact of the matter is he was advised that that would be the case. Is there a fair and just reason to let him out of it? Well, let's assume for purposes of the argument that his qualification was an assertion of innocence. And I would still say that there is not a fair and just reason. His primary contention here is that Wenner resulted in a much less sentencing exposure. I'm with you on the Wenner point. Let me make clear where I'm coming from. I agree with you on Wenner. I don't think he wins on that. But I'm concerned about the newly discovered evidence. Well, again, Your Honor, I would say that you have to look, not simply does the newly discovered evidence raise some question as to whether or not he is innocent, which I – and I believe my view of that affidavit is that it does not. But you have to look at the quality of this. And that affidavit does not, in my view of it, raise – is of such force that it raises a substantial doubt of his innocence. Yes, Your Honor. Counsel, I'm sure that we would feel a lot better if the district court had done some analysis. There was another conflict in the evidence. A landlady, who I'm sure had her reasons for saying this, but she said nobody made the meth at the house. And the confidential informant, and we don't know who that one is, said he watched it cook there. Now, you put that together with McClurg saying he didn't live there, and then you begin to think, well, maybe the reason that he refused to plead guilty was that maybe he was around, but he wasn't the one who did the cooking. And I personally would feel a lot better if the judge had said, okay, and I've got this and this and this, and I've balanced it, and I've come to the conclusion that this isn't really exculpatory evidence. So I have that problem. Let's turn to Booker. Do you think Booker doesn't apply in this case, sir? I don't think Booker applies. And the reason why I say that, Your Honor, is the only way that Booker applies and the only way that this defendant is asserting it applies is that it no longer makes the career offender mandatory. It only makes it advisory. But if you consider the fact that it doesn't necessarily mean that he would not have been sentenced as a career offender. It's a factor now that the court can't consider. And when you consider this defendant's long criminal history, the fact that he has been involved in some violent offenses, drugs and guns, and when the court considers those factors, I think it's highly doubtful that he would have received any sentence even close to the benefit that he received in this plea agreement, that agreed plea agreement that he had. What is the – if there were not a career criminal element, what's the largest sentence that he could have received under what he pled to? The most that he could have received would have been 40 years. And the reason why I say that, that's the maximum – well, 45 years, because that's the maximum sentence under the drug quantity. He pled to 5 grams or more, which gave him a mandatory minimum of 5 years up to 40. He also pled to a 924C, which actually the maximum is life, but it's a 5-year amount consecutive to whatever underlying sentence he gets for the drug amount. Now, under the career criminal, he could have gotten life. Is that right? I think it was 360 to life. Under the career criminal, based upon the charges he was pleading guilty to, the guidelines. I want to go back to the evidence issue, and I'm wondering if maybe the district court made a legal error. It said that the most important thing was whether the plea was knowing voluntarily and intelligent, which makes sense if that's the challenge. That's the reason you want to withdraw it, is you come back and you say, well, really, I was a little coerced by my lawyer. And then the district court would say, no, wait, let's go back. We really examined this. And the court here cites a First Circuit case where the voluntariness of the plea was, in fact, the problem. I'm wondering if that proposition on its own is a good proposition, but it doesn't apply when new evidence and fair and just is the prong that you're using. Well, Your Honor, I think that if you look at the motion that the defense raised, he really, he couched it in terms of, well, at least the first motion, he couched it in terms of winner, but he said that that rendered his plea unknowing and involuntary. So he did raise that, and I believe that's why the district court ---- But I'm talking, he was wrong about that as a matter of law. But I'm talking now on the motion for reconsideration, which is addressed as Crystal McClung's declaration. And there the judge says the most important factor is voluntary, intelligent and knowing. I'm wondering if he's mixing and matching the aspects of the basis for plea withdrawal just inadvertently. I don't think so, Your Honor. I think, again, when you take the motion that the defendant filed, you can't simply look at the first motion and then the reconsideration. You have to take it in its total. And in its total, he was arguing that winner made it a knowing and involuntary plea and that the newly discovered evidence was a fair and just reason. And I think it was proper for Judge Lasnik to consider that factor. The defense, I see I'm out of time, but if I can have just one moment to respond to the Ortega-Escano case. He raises that, but that is totally distinguishable from what we have here. In that case, it was a Supreme Court decision that basically changed the landscape of the immigration, illegal immigration cases and provided a legal defense. In other words, that defendant was legally innocent. We don't have that case here. Secondly, in that case, this Court said that it was improper to focus on the voluntariness, which I think was proper in that case because it was a case of legal innocence. That's not the case here. And I think it's distinguishable on those grounds. Thank you. Thank you, Your Honor. Do you have about a minute for rebuttal? Thank you. Going back to Ortega, the government in that case said that it did not establish legal innocence, that it was a far-fetched reason that he had. And this Court found that all he needs is a plausible reason to withdraw a plea at the time he made the motion, because it's critical. If it's before sentencing, traditionally courts have said they are freely allowed. This is a case where the government did not have a strong case. There were five people arrested in that house at the time my client was arrested on September 6, 2002. It was originally filed in State court. Only one of those people implicated Mr. Garcia. She was the homeowner who herself had a weapon. She had white powder. She had a drug ledger. She had all sorts of indicia of drug dealing in her own bedroom. And she gets up there and tells the police that I don't like drugs. I don't deal drugs. It was totally her – her – and that was the government's key witness against my client. Thank you. Thank you. The case of United States v. Garcia is submitted.
judges: B. Fletcher, McKeown, Gould